

**FILED**

SEP 1 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## DISTRICT COURT of the UNITED STATES
### for the
### DISTRICT OF COLUMBIA

---

George H. Bishop
U. S. EXPLORATION CORP.
and ASSOCIATED ENTITIES
1425 Lake Front Circle,
The Woodlands, Texas 77380

            Plaintiff,

                          Dock

     v.

INTERNAL REVENUE SERVICE
a Federal Corporation, the
principal place of business
of which is Washington, D. C.,
JAMES ALEXANDER, NIEVES NARVAEZ (sp)

            Defendants.

CASE NUMBER  1:06CV01593

JUDGE: Gladys Kessler

DECK TYPE: Pro se General Civil

DATE STAMP: 09/⬤/2006

---

### VERIFIED COMPLAINT FOR DECLARATORY RELIEF

---

Now comes George H. Bishop, plaintiff, in want of counsel, in the above styled action, and as and for a Verified Complaint for Declaratory Relief, shows to the Court as follows:

### JURISDICTION

That the Court has jurisdiction in the above styled action and such jurisdiction is invoked pursuant to:

    a. Article Three of the Constitution.

1

b. The Judiciary Act of 1789.

c. The 6th Article of the Bill of Rights guaranteeing due process of law.

d. The 14th Amendment to the Constitution of the United States    or    the    Equal Protection Amendment.

e. The DECLARATORY JUDGMENT ACT.

f. Title 28 U.S.C. sec. 2201, as provided in Federal Civil Judicial Procedure and   Rules at Rule 57.

g. The federal declaratory relief statute to declare the rights and relationships of   the parties.

h.   Title 28 U.S.C. section   2202,   the further necessary or proper relief based on declaratory judgment statute, specifically injunctive relief,   and   Title 28 U.S.C. section 1391, the general venue statute for federal civil action. Title 28 U.S.C. secs. 1443, 1446, 1447.

i.   Title 28 U.S.C. sec. 1331,   the general federal question statute, to adjudicate the matters presented to the Court herein.

j. That there is presently an actual controversy between the above named parties   hereto, concerning an amount of money in excess of one million dollars, which     involves     a violation of the rights of the plaintiff as set forth under the Constitution     of the United States and under the Statutes of the United States, particularly the   SAVINGS     TO SUITORS CLAUSE of the JUDICIARY ACT of 1789,   as more    fully set forth below.

1.    That the plaintiff, George H. Bishop (hereinafter plaintiff) in the above styled action is, and at all times pertinent hereto has been, an adult individual citizen of the State of Texas.

2.    That the first defendant named in the above styled action is, upon information and belief, a Federal Instrumentality, Internal Revenue Service (hereinafter IRS) the principal place of business for all times pertinent hereto being Washington, District of Columbia, U.S.A..

3.    That the second defendant named in the above styled action is James Alexander (hereinafter Alexander).

4.    That the defendant Alexander named in the above styled action is an adult male individual United States citizen and an agent of the IRS.

5.    That the third defendant named in the above styled action is Nieves Narvaez (sp) (hereinafter Narvaez).

6.    That the defendant Narvaez named in the above styled action is an adult male individual United States citizen and agent of the IRS.

7.    That there exists a diversity of citizenship between the above named parties hereto.

8.    That the IRS in the above styled action maintains the base of operations thereof within the venue of the Court.

9.    That there is presently an actual, ongoing and justiciable controversy between the above named litigants hereto which does not involve a question of taxes nor the allegation that there are any taxes, or any amount of taxes, owed by or between the said parties hereto.

10.   That the undersigned plaintiff herein asserts to the Court that the IRS, and the agents thereof, are required by various provisions of the Constitution of the United States, statutes of the United States, due process, equity and convention to conform to, obey and be bound by the rules and regulations which the defendant has formulated and propounded for the conduct of the statutorily determined and authorized duties and

3

purpose of such IRS as, for example, provided in *Vitarelli* and *Powell* set forth below:

> "It is, of course, a fundamental tenet of our legal system that the Government <u>must follow its own regulations.</u> Actions by an agency of the executive branch in violation of its own regulations are illegal and void." <u>Vitarelli v. Seaton,</u> 359 U.S. 535, 79 S.Ct. 968, 3L.Ed.2d 1012 (1959); [other cites]; <u>Powell v. Zuckert,</u> 125 U.S. App.D.C. 55, 61, 366 F.2d 634, 640-641 (1966).

11.    That the IRS, and the agents thereof,  by the assertion of the activity which is herein presented to the Court for determination,  are attempting to penalize the plaintiff for conduct, on the part of the plaintiff, which is not prohibited by the rules and regulations of the IRS.

12.    That the IRS, and the agents thereof,  by the assertion of the activity which is herein presented to the Court for determination,  are attempting to penalize the plaintiff for conduct, on the part of the plaintiff, which is not prohibited by any laws or regulations of the United States.

13.    That the IRS, and the agents thereof,  by the assertion of the activity which is herein presented to the Court for determination, are attempting to penalize the plaintiff for conduct, on the part of the plaintiff, which is not prohibited by any laws or regulations of the State of Texas.

14.    That the IRS, and the agents thereof,  by the assertion of the activity which is herein presented to the Court for determination, is attempting to penalize the plaintiff for conduct, on the part of the plaintiff, which is specifically provided for and authorized by the rules and regulations formulated, established and propounded by the said IRS.

15.    That the said rules and regulations which the IRS has instituted for the orderly conduct of

the appropriate exercise of the duties thereof are being ignored, misinterpreted and

violated by the IRS, and the agents thereof, in the relationship thereof with the plaintiff.

16.    That the said rules and regulations which are they that the IRS is violating are Title 26,

Sec. 52, and Title 26, Sec. 6062.

17.    That the IRS, through Alexander, and are asserting that the requirements of Sec. 52, of

Title 26 of the U.S.C, 1939 revision, must be applied to the 1040 tax returns of the plain-

tiff herein, such tax returns were all filed subsequently to 1983 and signed by Mr. John

Perrella who is the controller, chief accounting officer and chief financial officer of the

said plaintiff.

18.    That Sec. 52, of Title 26 of the U.S.C., 1939 revision, reads as follows:

"52. Corporation returns-(a) Requirement.

Every corporation subject to taxation under this chapter shall make a return, stating
specifically the items of its gross income and the deductions and credits allowed by this
chapter and such other information for the purpose of carrying out  the provisions of this
chapter as the commissioner with the approval of the Secretary may by regulations pre-
scribe. The return shall be sworn to by the   president, vice president, or other principal
officer and by the treasurer, assistant treasurer, or chief accounting officer.   In cases
where receivers, trustees in bankruptcy, or assignees are operating the property or
business of corporations, such receivers, trustees, or assignees shall make returns for such
corporations in the same manner and form as corporations are required to make returns.
Any tax due on the basis of such returns made by receivers, trustees, or assignees shall be
collected in the same manner as if collected from the corporations or whose business or
property they have custody and control."

19.  That the requirement, concerning the signing of the tax return,  is that two officers are to swear to the return,  one of whom is president, vice president, or other principal officer and the other either the treasurer, assistant treasurer, or chief accounting officer. Although the provision is that the return "shall be sworn to" by the said officers, there is not set out a requirement that a signature is to be affixed thereto by two, or any, of the said officers, it would not be unreasonable to assume that such would be the case, considering that the 1954 revision does specify that the return ... "shall be signed".

20.  That the 1954 enactment of the IRC at section 6062, concerning the signing of corporation tax returns, was amended to the following, to wit:

"Sec. 6062. Signing of corporation returns.

    -STATUTE-
    The return of a corporation with respect to income shall be signed by the president, vice-president, treasurer, assistant treasurer, chief accounting officer or any other officer duly authorized so to act. In the case of a return made for a   corporation by a fiduciary pursuant to the provisions of section 6012(b)(3), such  fiduciary  shall  sign the return. The fact that an individual's name is signed on the return shall be prima facie evidence that such individual is authorized to sign the return on behalf of the corporation."

21.  That some of the specifications set forth in Sec. 6062, as quoted above are superfluous to the circumstances of the undersigned, the reference to a fiduciary, which concerns a corporation in bankruptcy or receivership, is immaterial to the present incident.

22.    That as it applies to the present circumstance said Sec. 6062 could be condensed to read

as follows, to wit:

"Sec. 6062. Signing of corporation returns

-STATUTE-
The return of a corporation with respect to income shall be signed by the   president,
vice-president, treasurer, assistant treasurer, chief accounting officer or any other officer
duly authorized so to act. ... **The fact that an individual's name is signed on the return
shall be prima facie evidence that such individual is authorized to sign the return on
behalf of the corporation."** (emphasis added)

23.    That the IRS is making demand upon the plaintiff that the 1040 tax returns thereof do not

conform to the requirements of Sec. 52, of Title 26, U.S.C., and therefore do not trigger

the statute of limitations because such returns are nullities and do not constitute the filing

of a return at all.

24.    That the plaintiff herein contends that the said returns of the plaintiff were filed in good

faith reliance on the requirements of the IRC as set out in Sec. 6062, Title 26 of the said

U.S.C. and as such conform precisely thereto.

25.    That the plaintiff is facing the imminent threat of financial devastation by, what he

perceives as unlawful and lawless conduct on the part of the IRS, and the agents thereof,

as set forth above.

26.    That, upon information and belief, this action is a case of first impression as to the

circumstances.

27.    That, upon information and belief, plaintiff contends that said justiciable matter is ripe for

judicial determination.

28.    I, George Bishop, declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct, except for the statements specifically made
upon information and belief, however, the undersigned verily believes the same to be
true.

WHEREFORE:  The plaintiff herein moves the Court for DECLARATORY RELIEF in
the form of a declaration that the defendant IS or IS NOT required to observe and conform to the
rules and regulations which such defendant has created by the legislatively determined
procedures for establishing the same.

Further, to declare that Section 6062, Title 26 of the U.S. Code is the criterion by which
the corporate signature requirements are established for the 1040 tax returns at this time, and, for
all times pertinent to this action.

Respectfully,

George H. Bishop

---

JURAT

The above signed George H. Bishop, being personally known to me did appear before me
and did then and there affix his signature to the attached document.

Dated August 28, 2006

_____ Notary for the State of Texas.

My commission expires _____

8

DISTRICT COURT of the UNITED STATES
for the
DISTRICT OF COLUMBIA

George H. Bishop
U. S. EXPLORATION CORP.
and ASSOCIATED ENTITIES
1425 Lake Front Circle,
The Woodlands, Texas 77380

                    Plaintiff,

                              Docket No._____

        v.

INTERNAL REVENUE SERVICE
a Federal Corporation, the
principal place of business
of which is Washington, D. C.,
JAMES ALEXANDER, NIEVES NARVAEZ (sp)

                Defendants.

---

BRIEF IN SUPPORT OF

VERIFIED COMPLAINT FOR DECLARATORY RELIEF

---

The undersigned, with this "BRIEF IN SUPPORT OF VERIFIED COMPLAINT" does

set forth the following cases in support of his Complaint, to which this document is attached,

stating as follows:

TREASURY REGULATIONS GIVE WAY TO STATUTE

06 1593

1. In the case of United States v. Stapf. 309 F.2d 592, the court ruled:

"The government relies on Treasury Regulation 105... which extends the language of the

FILED

SEP 1 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

statute...Neither this section of the Act or its legislative history envision such an example or result. The regulation in this regard changes the plain terms of the statute by sweeping away the last clause thereof and must give way to the statute. Koshland v. Helvering, 1936, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268; Miller v. Commissioner of Internal Revenue, 5 Cir., 1956, 237 F.2d 830."

And,

"We look to the terms of the statute itself for its meaning."

2. In the case of Thompson v. Clifford. 408 F.2d 154, the court held:

"a right clearly created by statute cannot be taken away by regulation. Northern     Natural Gas Co. v. O'Malley, 277 F.2d 128, 134 (8th Cir. 1960). See also United States v. Morton Salt Co., 338 U.S. 632, 647, 70 S.Ct. 357, 94 L.Ed. 401 (1950); Miller v. Commissioner of Internal Revenue, 237 F.2d 830, 836 (5th Cir. 1956)."

And,

"'Administrative determinations must have a basis in law' and their force depends heavily on the validity of the reasoning in the logical bridge between statute and regulation. Social Security Board v. Nierotko, supra note 91, 327 U.S. at 369, 66 S.Ct. at 643. See also Skidmore v. Swift & Co., supra note 90, 323 U.S. at 140, 65    S.Ct.    161;    Jewell Ridge Coal Co. v. Local No. 6167, UMW, 325 U.S. 161, 169, 65    S.Ct. 1063, 89 L.Ed. 1534 (1945)."

And,

"Legislative silence cannot mean ratification unless, as a minimum, the existence of the administrative practice is brought home to the legislature. D.C. Federation of Civic Ass'ns v. Airis, 129 U.S.App.D.C. 125, 391 F.2d 478 (Feb. 15, 1968). Compare the cases cited note 46, supra.

## VALIDITY OF RETURNS

3. In the case of Morris Miller, 237 F2d 830 (1956), the petitioner's wife had filled out his income tax returns in the years 1943 - 1947. The taxpayer, Mr. Miller, did not sign these returns. All of the inscriptions were affixed by the taxpayer's wife, upon his oral authorization and direction, at the place on the return pointed out by the accountant who had prepared the return. The court held that: "It would be a harsh rule that would deny to a taxpayer the right to plead the

statute of limitations otherwise available to him unless there was such a complete failure to comply with the statute that the Government's interests were in some way jeopardized." (emphasis added) The court further held that "a return complete in form, signed in the taxpayer's name by one purporting to have authority and who actually had such authority, was filed, we find no basis for holding that this was no such return as would commence the running of the statute of limitations."

4. Morris was followed in the case of Clyde M. Booher, 28 TC 817 (1957), the court held that the return which petitioner's wife prepared, signed in his name, and filed on his behalf, were handled by her as petitioner's authorized agent, and that the employment of a formal written power of attorney to evidence such authority was not essential.

5. In the case of Indiana Rolling Mills Co., 13 B.T.A. 1141 (1928), the petitioner filed its income and profits-tax returns in 1919. The tax return was sworn to by the petitioner's vice president and secretary, and was not a false or fraudulent return with intent to evade tax. A deficiency notice was mailed to the petitioner in 1926. The sole issue was whether, under these facts, assessment of said deficiency was barred by the statute of limitations.

The material provisions of the Revenue act of 1918 relating to the making of returns by corporations are as follows:

> Sec. 239. That every corporation subject to taxation under this title and every personal service corporation shall make a return, stating specifically the items of its gross income and the deductions and credits allowed by this title. The return shall be sworn to by the president, vice president, or other principal officer and by the treasurer or assistant treasurer.

Prior to the notice of deficiency, the IRS never objected to the form or manner in which the return was executed, nor requested the petitioner to file a return verified by the affidavit of its treasurer or assistant treasurer. The court held that the oath of the vice president and secretary was sufficient to have fulfilled the requirements of the law for corporate return.

3

In its opinion the court stated:

> "What is the essence of the thing required to be done by the statute? It is, we think, the making of an honest return by the corporation, wherein are set forth specifically the items of its gross income and the allowable deductions and credits, in order that the Commissioner may determine the correct amount of its tax liability. If such required information is fairly and honestly given in a return sworn to by officers of the corporation who are familiar with its af fairs, this in our opinion constitutes a substantial compliance with the provisions of the statute."

> "The prime object of the legislative intention was manifestly to require that the specified information is furnished under oath by the corporate officers, and where such information is fairly and honestly given in a return sworn to by the vice president and secretary of the corporation the legislative purpose is achieved in no less degree than if the return had been sworn to by the vice president and treasurer or assistant treasurer. ... The fact that the statute provides that the return "shall" be sworn to by certain officers of the corporation named does not necessarily require the construction that this provision is mandatory. In Wisconsin R. Co. v. Foley, 94 U.S. 100, the court said: "'Shall' ought undoubtedly to be construed as meaning `must' for the purpose of sustaining or enforcing an existing right; but it need not be in creating a new one." (emphasis added)

6. In the case of AMF Incorporated v. United States, 610 F.2d 739 (1979), the petitioner was arguing substantial compliance with a regulation, and the court rephrased the argument with the words, "the essence of the thing required to be done by this [regulation]" has been complied with, and cited, Indiana Rolling Mills Co. 13 BTA 1141 (1928); Jaquelin E. Taylor, 67 T.C. 1071 (1977).

7. In the case of Mabel Elevator Co., 2 BTA 517 (1925), the taxpayer completed the return based upon a fiscal year basis, instead of the required calendar year basis. The Commission argued that the return was void and could not start the statute of limitations. The court disagreed, and the court held that:

> "There can be no doubt that such limitations are placed on assessments for the purpose of assuring the taxpayer, who has made an honest return, that after such

period his tax liability will not be reopened ... If the limitations can be avoided on the plea that the return filed is not such a return was not required by law, although filed in good faith, there is no such assurance for the taxpayer and the limitation becomes of doubtful value at least. If the statute requires any interpretation great weight must be given to the purpose which it was obviously intended to accomplish. (emphasis added)

8. In the appeal for the case of United States v. Mabel Elevator Co. 17 F.2d 109, the court ruled:

"It comes down to the question as to whether, when a taxpayer makes an honest return, which he believes to be in compliance with the law, the government can assess a deficiency against him after the expiration of 5 years, on the ground that it was not in strict compliance with the law. This question, it seems to me, must be answered in the negative, as it was answered by the United States Board of Tax Appeals, whose decision is reported in 2 B.T.A. 517. Other wise, there would practically be no period of limitation whatsoever, and every man who made an inaccurate return could have a deficiency assessed against him at any time, because an inaccurate return is not a return made strictly in compliance with the law."

9. In the case of Colmer-Green Lumber Co., 12 BTA 256, two corporations filed a consolidated return which did not segregate the items of income and deductions for the respective companies, which was required by regulations of the Commissioner. The court held:

"The statute does not require that such a return include the separate income and deductions of each corporation. The regulations of the Commissioner, approved by the Secretary, however, do provide that statements and schedules shall be filed giving details of the items of gross income and deductions. Whether the regulations were complied with, the Commissioner had the opportunity to determine... The period of Limitation prescribed by the statute is one of repose and it should not lightly be construed to permit the respondent to reopen cases upon the ground that the return filed in good faith was not the return required by the statute." (emphasis added)

10. In the case of Ethel D. Co. (1932) 27 BTA 25 (aff'd without discussion of this point (1934) 63 App DC 157, 70 F2d 761), the return was executed and acknowledged by C.J. Berry, president and J.R. Murphy, assistant secretary. The petitioner's treasure, D.S. Ewing, was away from his office a great part of the time. Murphy prepared petitioner's financial statements and submitted them to the board of directors. The court held that:

"The facts are clear that, while J.R. Murphy held the official position of assistant secretary and signed the return as such, he, in fact was the person responsible for petitioner's financial matters. We think he was a proper person to execute and acknowledge the return along with the president of the corporation. Indiana Rolling Mills, 13 BTA 1141, and Anderson Lumber Co., 15, BTA 475. The facts presented here do not come within the language of the Supreme Court in Lucas v. Pilliod Lumber Co., 281 U.S. 245. The court there held that the requirement of the Revenue Act of 1918, that returns of corporations shall be acknowledged, is not subject to waiver. In that case the return was unsupported by oath. Here the only irregularity is that the return is sworn to by the president and assistant secretary instead of the assistant treasurer, and we have found that to all intents and purposes the assistant secretary was the assistant treasurer. (emphasis added)

11. In the case of Lucas v. Pilliod Lumber Co., 281 U.S. 245 (1930), the 1919 return was unsupported by oath, but the respondent claimed the defect was cured since the tax officers accepted and held the return for several years, and in 1923 requested and obtained an adequate verification by the proper corporate officers. The court held that, due to the absence of signatures on the 1919 return, the return did not meet the requirements of Section 239 of the Revenue Act of 1918, and the attempt to cure it did not secure the benefit of the statute of limitations.

12. In the case of Zellerback Co. v. Helvering, 293 U.S. 181, the Supreme Court, citing Lucas v. Pilliod Lumber Co., 281 U.S. 245, held that perfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return is sworn to as such, and evinces an honest and genuine endeavor to satisfy the law.

13. In the case of J.F. Anderson Lumber Co., 15 TBA 479 (1929), one of the issues was the validity of a returns filed 1919. The return was executed by J.F. Anderson, president, and J.V. Dobson, secretary. The treasurer of the corporation at the time was O.T. Litchfield. The return was filed in good faith and there were no omissions of income therefrom or failures on the part of the petitioner to report its full income therein. The court cited Indiana Rolling Mills Co. 13 BTA 1141, and Edwin J. Schoettle Co., 13 BTA 950, in support of its holding that:

6

"In the proceeding at bar the functions of the treasurer were being exercised by the persons who signed the return. We therefore think that the return was properly executed. (emphasis added)

14. In the case of Edwin J. Schoettle Co. 13 BTA 950, the return was sworn to by petitioner's president and secretary. Schoettle, who executed the return as president of the company, was during the taxable year and at the date the return was filed was also the petitioner's treasurer. The court held that it, Schoettle's signature, satisfied the requirement of Section 13(b) of the Revenue Act of 1916.

15. In the case of General Instrument Corporation, 35 TC 803 (1961), the return was signed by only one officer, instead of the two required by Sec 52(a) which states: "The return shall be sworn to by the president, vice president, or other principal officer and by the treasurer, assistant treasurer, or chief accounting officer." The court held that the signatures of both officers was mandatory, and cited Forth & Railroad Realty Co., 25 T.C. 458 (1955), and Burford Oil Co., 153 F.2d 745 , affirming 4 T.C. 613 (1945). In both cases the court held the signature of only one corporate officer was insufficient to fulfill the requirements of Sec 52(a). (Note: This case was decided under the requirements of Sec 52(a) of the 1939 version of Title 26 and the filings of the undersigned are provided subject to paragraph 6062 of Title 26, which is the version of 1954.)

16. In the case of General Manufacturing Corp, 44 TC 513 (1965), the petitioner was a wholly owned subsidiary of B.B. Rider Corp (hereinafter "Rider"). Benjamin Stratmore was president of both Rider and petitioner. A consolidated return was filed for the petitioner and Rider, and was signed by Benjamin Stratmore, with the corporate seal of Rider affixed thereto. The court found that even though the consolidated return was invalid, the return was nevertheless valid as a separate return of the petitioner for the purpose of activating the 3 year statute of limitation. The president's signature fulfilled the requirements of section 6062.

7

The court held that:

> "Numerous cases decided by this and other courts hold that in order to start the running of the assessment period a return need not be perfectly accurate or complete, or even filed on the form prescribed, if it is filed in substantial compliance with the requirements for a return. Zellerbach Paper Co. v. Helvering, 293 U.S. 172 (1934); Germantown Trust Co. v. Commissioner, 309 U.S. 304 (1940); and F.A. Hall Co., Hall Co., Inc., 3 BTA 1172 (1926).

17. In the case of Stetson & Ellison, 11 B.T.A. 397, the court held as follows:

> "Where a consolidated return has been prepared and filed in good faith, and the    names of the companies included in the consolidation are made clear to the respondent, and all of the `Items of gross income and the deductions' are included there within, although said items of income and deductions may not be in sufficient detail to enable the respondent to accurately compute the tax against each of the companies, there is a `substantial' compliance with the statute." (emphasis added)

18. In the case of Reiff v. Commisioner, 77 TC 1177 (1981) the court held as follows:

> "A return need not be perfectly accurate or complete if it purports to be a return, is sworn to as such, and evinces an honest and genuine endeavor to satisfy the requirements for a return. Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 180 (1934); Florsheim Bros. Co. v. United States, 280 U.S. 453, 462 (1930); Houston v. Commissioner, 38 T.C. 486, 491 (1962). See United States v. Moore, 627 F.2d 830,   834-835 (7th Cir. 1980). To qualify, however, a return must contain sufficient data from which respondent can compute and assess the liability with respect to a particular tax of a taxpayer. Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 188, (1957); Commissioner v. Lane-Wells Co., 321 U.S. 219, 222-223 (1944); Germantown Trust Co. v. Commissioner, 309 U.S. 304, 309 (1940); Durovic v. Commissioner, 487 F.2d 36, 39 (7th Cir. 1973), affg. On this issue and revg. On another issue 54 T.C. 1364, 1387-1388 (1970); White v. Commissioner, 72 T.C. 1126, 1129 (1979); Hatfield v. Commissioner, 68 T.C. 895, 898 (1977); Cupp v. Commissioner, 65 T.C. 68, 79 (1975), affd. Without published opinion 559 F.2d 1207 (3d Cir. 1977); Hosking v. Commissioner, 62 T.C. 635, 639 (1974) General Manufacturing Corp. v. Commissioner, 44 T.C. 513, 523 (1965); Houston v. Commissioner 38 T.C. at 491. The disclosure of such data must be provided in a uniform, complete, and orderly fashion. Commissioner v. Lane-Wells Co., 321 U.S. at 223. But the failure of a return to reflect the computation of a tax will not, in itself, render it `no return.' Germantown Trust Co. v. Commissioner, 309 U.S. at 310."

19. In the case of Germantown Trust Co., Trustee, v. Commissioner of Internal Revenue 309

U.S. 304 the court held that:

"It cannot be said that the petitioner, whether treated as a corporation or not, made no return of the tax imposed by the statute. Its return may have been incomplete in that it failed to compute a tax, but this defect falls short of rendering it no return whatever. Zellerbach Paper Co. v Helvering, 293 U.S. 172, 180; Commissioner v. Stetson & Ellison Co., 43 F.2d 553; United States v. Tillinghast, 69 F.2d 718; Mabel Elevator Co., 2 B.T.A. 517; Abraham Werbelovsky, 8 B.T.A. 442, 446; Estate of F.M. Stearns, 16 B.T.A. 889; J.R. Brewer, 17 B.T.A. 704."

20. In the case of Florsheim Bros. Co. v. United States. White, Collector, v. Hood Rubber Co.

280 U.S. 453, the court held that:

"The word `return' is not a technical word of art. It may be true that the filing of a return which is defective or incomplete under section 239 is sufficient to start the running of the period of limitation;...But the defective or incomplete return purports to be a specific statement of the items of income, deductions and credits in compliance with section 239. And, to have that effect, it must honestly and reasonably be intended as such."

## REASONABLE CAUSE FOR FAILURE

21. In the case of Ragsdale v. Paschal et al., 118 F.Supp. 280 (1954), the court held that:

"It follows, of course, that the plaintiff not having under    stood his income, he   could not be and was not guilty of fraud, and the imposition of a fraud penalty in this     case   is not justified."

"The failure of the plaintiff to file an income tax return for the year 1944, was not due to willful neglect, but was due to a reasonable cause. ..."

22.  In the case of Southeastern Finance Company v. Commissioner, 5 Cir., 153 F.2d 205, the

court said:

"Reasonable cause means nothing more than the exercise of ordinary business care and prudence."

23.  See also P. Dougherty Co. v. Commissioner, 4 Cir., 159 F.2d 269, 273. In re Fisk's Estate, 6

Cir., 203 F.2d 358, 359 states:

"Reasonable cause means nothing more than the exercise of ordinary business care and prudence. Haywood Lumber & Mining Co. v. Commissioner, supra [2 Cir., 178

9

F.2d 769]; Orient Investment & Finance Co. Inc., v Commissioner, 83 U.S. App.D.C. 74, 166 F.2d 601, 3 A.L.R. 2d 612; Southeastern Finance Company v. Commissioner, 5 Cir., 153 F.2d 205. Various courts have held as a matter of law that reliance upon an attorney or an accountant for making out and filing of tax returns constitutes reasonable care. Dayton Bronze Bearing co. v. Gilligan, 6 Cir., 281 F. 709; Haywood Lumber & Mining Co. v. Commissioner, supra; Orient Investment & Finance Co. Inc. v. Commissioner, supra. The tax court has repeatedly decided that reliance upon counsel constitutes reasonable cause for failure to timely file necessary tax returns. The C. R. Lindback Foundation Inv. V. Commissioner, 4 T.C. 652; Brooklyn & Richmond Ferry Co., Inc. v. Commissioner, 9 T.C. 865; Safety Tube Corporation v. Commissioner, 8 T.C. 757; Diana McFadden Houk, 6 T.C.Memo. 649."

24. As pointed out by the Second Circuit in Haywood Lumber & Mining Co., supra, 178 F.2d at 771:

"To impute to the taxpayer the mistakes of his consultant would be to penalize him for consulting an expert; for if he must take the benefit of his counsel's or accountant's advice cum onere, then he must be held to a standard of care which is not his own and one which, in most cases, would be far higher than that exacted of a layman."

25. In re Fisk's Estate, 203 F.2d 358, 360, states:

"We adhere to the rule stated in Haywood Lumber & Mining Co., supra, that as a matter of law reasonable cause was shown in this case. This rule, we hold, applies to the filing of tax returns as well as to reliance upon technical advice in complicated legal matters. We think this conclusion is in accord with the principle declared by the Supreme Court that the penalties under the revenue laws were designed to be imposed upon conduct 'which is intentional, or knowing, or voluntary, as distinguished from accidental.' United States v. Murdock, 290 U.S. 389, 394, 54    S.Ct. 223, 225, 78 L.Ed. 381. 'It is not the purpose of the law to penalize * * *    innocent errors made despite the exercise of reasonable care.' Spies v. United States,  317 U.S. 492 [494], 496, 63 S.Ct. 364, 367, 87 L.Ed. 418." Bouvelt Parts Development    Corporation,    10    T.C.M.    584;    Reliance    Factoring Corporation, 15 T.C.   604."

26. In the case of Haywood Lumber & Mining Co. v. Commissioner of Internal Revenue. 178 F.2d 769 the court held:

"'Reasonable cause' excusing the penalty where taxpayer's failure to file personal holding company returns is due to 'reasonable cause' means that taxpayer exercised ordinary business care and prudence. 26 U.S.C.A. section 291"

"When a corporate taxpayer selects a competent tax expert, supplies him with all necessary information and requests him to prepare proper tax returns, taxpayer has

done all that ordinary business care and prudence can reasonably demand as respects imposition of penalty for failure to file personal holding company tax returns. 26 U.S.C.A. section 291."

"Reliance on advice of counsel or of expert accountant sought and received in good faith is `reasonable cause' for failing to file a tax return as respects imposition of penalties therefore."

"Where corporate taxpayer's officer consulted a competent certified accountant to prepare proper corporate tax returns and disclosed all necessary information and accountant knew that taxpayer was a personal holding company but did not inform officer thereof and officer filed on behalf of the corporation only the ordinary returns  prepared  by  the  accountant, corporate taxpayer exercised `ordinary business care and prudence' and was not subject to penalty for failure to file personal holding company's surtax returns. 26 U.S.C.A. section 291."

"Fact that all responsibility for preparation of tax returns is delegated by taxpayer to an agent does not require that a taxpayer should be held to accept its agent's efforts with all the burdens and be chargeable with the agent's negligence in preparing a tax return."

27. "Reasonable cause" has been defined by the Regulations to mean that the taxpayer exercised

ordinary business care and prudence. Treas. Reg. 103, section 19.291-1; see Southeastern

Finance Co. v. Commissioner, 5 Cir., 153 F.2d 205; Girard Inv. Co. v. Commissioner, 3 Cir., 122

F.2d 843, 848, certiorari denied 314 U.S. 699, 62 S.Ct. 479, 86 L.Ed. 599, citing Klein, Federal

Income Taxation 1674.


And,

"When a corporate taxpayer selects a competent tax expert, supplies him with all necessary information, and requests him to prepare proper tax returns, we think the taxpayer has done all that ordinary business care and prudence can reasonably demand."

And,

"We doubt if anyone would suggest that a client who stated the facts of his case to his lawyer must, in order to show ordinary business care and prudence, inquire specifically about the applicability of various legal principles which may be relevant to the facts stated. The courts have recognized that reliance on the advice of counsel C.R. Lindback Foundation v. Commissioner, 4 T.C. 652, 667, affirmed, 3 Cir., 150

11

F.2d 986; Dayton Bronze Bearing Co. v. Gilligan, 6 Cir., 281 F. 709. or of expert accountants, Hatfried, Inc., v. Commissioner, 3 Cir., 162 F.2d 628; Orient Inv. & Finance Co. v. Commissioner, 83 U.S.App.D.C. 74, 166 F.2d 601. sought and received in good faith is "reasonable cause" for failing to file a tax return. We think those cases are correctly decided and in principle control the case at bar."

And,

"To impute to the taxpayer the mistakes of his consultant would be to penalize him for consulting an expert; for if he must take the benefit of his counsel's or accountant's advice cum onere, then he must be held to a standard of care which is not his own and one which, in most cases, would be far higher than that exacted of a layman."

"In Paymer v. Commissioner, 2 Cir., 150 F.2d 334, 337 we said that reasonable cause was a question of fact and `therefore presents no reviewable issue.' This abbreviated statement does not state the whole principle, which is better expounded in Hatfried, Inc. v. Commissioner, 3 Cir., 162 F.2d 628, 635. As there pointed out, whether the elements which constitute `reasonable cause' are present is a question of fact, but what elements must be present to constitute "reasonable cause" is a question of law. The Tax Court erred in our opinion upon this question of law."

28. In the case of Southeastern Finance Co. v. Commissioner of Internal Revenue 153 F.2d 205. the court held:

"'Reasonable cause' within provision of Internal Revenue Code imposing penalties for failure to file timely return, unless failure is due to reasonable cause, means nothing more than exercise of ordinary business care and prudence." 26 U.S.C.A. Int.Rev.Code, section 291.

29. In the case of National Tank & Export Co. v. United States., 35 F.2d 381 (1929), the court held:

"The fact that this company was in error (if it were in error), as to its conclusion that the consolidated income tax return was proper would not serve to establish that the return was "false or fraudulent", with intent to evade the tax.

30. In the case of Miller v. Commissioner of Internal Revenue, 237 F.2d 830, the court also held that:

"Fully recognizing, as we do, the necessity for regulations to make explicit many of the general provisions of the taxing statutes, the courts nevertheless cannot give effect

to regulations that modify or limit to the detriment of the taxpayer the express terms of the statute itself,"

"The Treasury's recognition, through the issuing of this regulation, that in certain circumstances chosen by it someone other than a taxpayer himself can sign his return and make it "the return required" by the statute, cannot have the effect of cutting down or limiting what may be a return as defined in the law itself. Such a regulation cannot be construed by the courts as making a return that does not comply with its terms "no return at all." The statutory grant of power to the Treasury to issue regulations does not touch upon the matter of the execution or making of the return,"

And,

"What we have said with respect to the sufficiency of the returns to start the running of the statute of limitations necessarily concludes the negligence issue in favor of the taxpayer. If, as we have held, the returns were "the returns required" under the statute, then there was no failure..., to make and file a return at the time required by the statute."

And,

"The Tax Court's decision on this point was based on the assumption that no return, within the contemplation of the statute, was filed by the taxpayer...Even if this were so, the fact that the taxpayer and his wife, who signed his name to the returns, acted in accordance with the instructions of a certified public accountant who prepared and signed the returns himself, seems indisputably to prove that such a failure (to file on time) was "due to reasonable cause and not due to willful neglect," and that a holding to the contrary with no countervailing evidence before the Tax Court could not be supported. We, therefore, hold that the negligence penalties imposed by the Commissioner should not have been sustained by the Tax Court."

## TAXING ACTS CONSTRUED LIBERALLY IN TAXPAYER'S FAVOR

31. In the case of United States v. Updike et al. 50 S.Ct. 367, the court held that:

"It may be that the saving clause was not strictly necessary, but was inserted from excessive care to put the right of the taxpayer beyond dispute. In any event, we think this is the fair interpretation of the clause, and the one which must be accepted, especially in view of the rule which requires taxing acts, including provisions of limitation embodied therein, to be construed liberally in favor of the taxpayer." Bowers v. N.Y. & Albany Co., 273 U.S. 346, 349, 47 S.Ct. 389, 71 L.Ed. 676.

32. In the case of Bowers v. New York & Albany Lighterage Co. 47 S.Ct. 389, the court held:

"The limitation applies to petitioner and to the claims. It applies to suit; the only question is whether it also bars distraint. The provision is a part of a taxing statute;

13

and such laws are to be interpreted liberally in favor of the taxpayers." Eiedman v. Martinez, 184 U.S. 578, 583, 22 S.Ct. 515, 46 L.Ed. 697; Shwab v. Doyle, 258 U.S. 529, 536, 42 S.Ct. 391, 66 L.Ed. 747, 26 A.L.R. 1454.

33.  In the case of Old Colony R. Co. v. Commissioner of Internal Revenue. 52 S.Ct. 211, the

court in determining the reasonable construction of the tax act, held that:

"The rule which should be applied is established by many decisions. `The legislature must be presumed to use words in their known and ordinary signification.'" Levy's Lessee v. M'Cartee, 6 Pet. 102, 110, 8 L.Ed. 334. "The popular or received import of words furnishes the general rule for the interpretation of public laws." Maillard v. Lawrence, 16 How. 251, 261, 14 L.Ed. 925. And see United States v. Buffalo Gas Co., 172 U.S. 339, 341, 19 S.Ct. 200, 43 L.Ed. 469; United States v. First Nat. Bank,  234 U.S. 245, 258, 34 S.Ct. 846, 58 L.Ed. 1298;     Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann. Cas. 1917B, 1168. As was said in Lynch v. Alworth-Stephens Co., 267 U.S. 364, 370, 45 S.Ct. 274, 276, 69 L.Ed. 660. "the plain, obvious and rational meaning of a statute is always to be preferred to any curious, marrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover." This rule is applied to taxing acts. De Ganay v. Lederer, 250 U.S. 376, 381, 39 S.Ct. 524, 63 L.Ed. 1042."

And,

"If there were doubt as to connotation of the term, and another meaning might be adopted, the fact of its use in a tax statute would incline the scale to the construction most favorable to the taxpayer. Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211; United States v. Merriam, 263 U.S. 179, 44 S.Ct. 69, 68 L.Ed. 240, 29 A.L.R. 1547; Bowers v. Lighterage Co., 273 U.S. 346, 47 S.Ct. 389, 71 L.Ed. 676; United States v Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984; Burnet v. Niagara Falls B. Co., 282 U.S. 648, 51 S.Ct. 262, 75 L.Ed. 594."

34.  In the case of Commissioner of Internal Revenue v. Wilson. 60 F.2d 501, the court held that:

"If the wording is clear and unambiguous, it ends the inquiry, unless a literal construction leads to an impossible conclusion or one clearly at variance with the intent of Congress. United States v. Mo. Pac. Ry. Co., 278 U.S. 269, 277, 49 S.Ct. 133, 73 L.Ed. 322; Fleischmann Construction Co. v. United States, 270 U.S. 349, 360, 46 S.Ct. 284, 70 L.Ed. 624; Darby-Lynde Co. v. Alexander (C.C.A. 10) 51 F.2d 56, cert. denied 284 U.S. 666, 52 S.Ct. 40, 76 L.Ed."

And,

"Our first duty is to ascertain the true intent of Congress, Moffat Tunnel Imp. Dist. V. Denver & S.L. Ry. Co. (C.C.A. 10) 45 F.2d 715, 723, cert. denied 283 U.S. 837, 51

S.Ct. 485, 75 L.Ed. 1448; Balanced Rock Scenic Attractions v. Town of Manitou (C.C.A.10) 38 F.2d 28, cert. denied 281 U.S. 764, 50 S.Ct. 463, 74 L.E. 1172; Darby-Lynde Co. v. Alexander, supra; and to do that, we must have regard for the general legislative purpose, United States v. Katz, 271 U.S. 354, 357, 46 S.Ct. 513, 70 L.Ed. 986."

And,

"It is a statute of repose, and subject to the rule `which requires taxing acts, including provisions of limitation embodied therein, to be construed liberally in favor of the taxpayer.' United States v. Updike, 281 U.S. 489, 496, 50 S.Ct. 367, 369, 74 L.Ed. 984; Bowers v. N.Y. & Albany Lighterage Co., 273 U.S. 346, 349, 47 S.Ct. 389, 71 L.Ed. 676; Old Colony R. Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484."

And in reference to regulations vs. the statutes:

"We read them as in accord with the statutes; if they are in conflict, that statutes prevail."

35. In the case of United States v. Havner. 101 F.2d 161, the court ruled:

"It is obvious that the sole purpose of this enactment was to fix a time beyond which `steps to enforce collection might not be initiated'. It adds nothing to the power of the Government to sue, but places a time limitation upon its right to sue. It is true that such a provision, when contained in a taxing statute, is to be construed liberally in favor of the taxpayer, United States v. Updike, 281 U.S. 489, 496, 50 S.Ct. 367, 74 L.Ed. 984; Bowers v. New York & Albany Lighterage Co., 273 U.S. 346, 349, 47 S.Ct. 389, 71 L.Ed. 676; Old Colony R. Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484; Commissioner v. Wilson, 10 Cir., 60 F.2d 501, 503,..."

36. In the case of Union Pac. R. Co. v. Bowers 24 F.2d 788, the court ruled:

"That the right to claim large sums of interest covering long periods of time, when the government was not paid its lawful taxes, should depend on a rejection of payments of deficiencies in taxes by willing taxpayers, with all the attendant risks of change of heart, insolvency, or death of the debtor, seems incredible."

And,

"To require him to pay interest on a sum which it was impossible for him to include in his original return is a harsh interpretation of the statute,"

And,

"Moreover, Congress has imposed no interest in cases where no return whatever is filed, and no penalty if the failure was excusable." R.S. 3176 (26 USCA sections 97, 98; Comp. St. section 5899).

37. In the case of Mayflower Investment Co. v. Commissioner Of Int. Rev. 1 B.T.A 236, the

court ruled:

"We have recently held in Miller v. Commissioner of Internal Revenue, 5 Cir., 237 F.2d 830, that if a taxpayer acted in accordance with the instructions of a certified public accountant, where he was not put on notice of any facts to cause him to doubt his skill, his incorrect actions in the method of signing could not support a finding by the Tax Court that his error was due to willful neglect."

And,

"We have no hesitancy in applying the same rule to a practicing lawyer on whom a taxpayer has reason to rely. It cannot be a requirement, as I suggested by the respondent here, that a lawyer or accountant must be shown in fact to be a `tax expert' before reliance on his advice is reasonable. We have held that reasonable cause as used in this section of the Code `means nothing more than the exercise of ordinary business care and prudence.' Southeastern Finance Co. v. Commissioner of Internal Revenue, 5 Cir., 153 F.2d 205."

38. In the case of In Re Lamborn. 17 F.2d 109, the court had noted the following:

"In Union Pacific R. Co. v. Bowers, 24 F.2d 788 (2nd Circ.1928) ("Bowers"), a taxpayer filed an original return, then discovered an error and volunteered an amended return showing an additional tax of $413,724. The Bureau demanded interest on this already-considerable sum from the date of the original return. The 2nd Circuit panel, by Judges Learned and Augustus Hand, held for the taxpayer. Analyzing the interest provisions of the 1921 Revenue Act, the Judges ruled that `the return' meant `the original return, if bona fide, even if inaccurate'. But the real gist of the decision was that these Judges found it `incredible' that the Bureau should demand such interest from `willing taxpayers'" 24 F.2d p 790."

39. And in reference to Florsheim Bros. Drygoods Co. v. U.S., 280 U.S. 453, 50 S.Ct. 215, 74

L.Ed. 542 (1930) ("Florsheim") noted that:

"Mr. Justice Brandeis assumed arguendo `that the filing of a return which is defective or incomplete... is sufficient to start the running of the period of limitation;...'In support of this assumed rule, he cited Mabel and Bowers."

Respectfully,

George H. Bishop

_____

JURAT

The above signed George H. Bishop, being personally known to me did appear before me and did then and there affix his signature to the attached document.

Dated August 28, 2006

Notary for the State of Texas.

My commission expires _____



SHARON B. HILLEBRANDT
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
SEPT. 30, 2009

17